UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
New Haven Division

2010 MAY 17  P

IN RE:  HERMAN VAN ECK                    USDC DOCKET NO:

-------------------------------------------------------------------------

APPEAL FROM:

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
New Haven Division

2010 JUN 28  P 12

IN RE:

JAN HERMAN VAN ECK                    :  CHAPTER 11
       DEBTOR                         :  CASE NO. 08-32911 LMW

MAY 14, 2010

-------------------------------------------------------------------------

### NOTICE OF APPEAL AND
### MOTION FOR REVIEW OF JUDGMENT

The named Debtor in the above-captioned bankruptcy case hereby Notices the

Court as to Appeal, and Motions the Court for Review of, the Judgment of Dismissal

entered by the Untied States Bankruptcy Court in the above-captioned matter.  The

Debtor further represents as follows:

1.      There are foundational grounds for this Appeal for Review on the merits.

The Court has chosen to Rule on the matters before it in a manner not consonant with

the weight of the evidence.

2.      The United States is a party in interest in these proceedings. The United

States is also a Creditor in the Debtor's case.

3.      The Court has based its Judgment of Dismissal consequent to a long

series of Pleadings made by parties that in turn were not real parties in interest.  First,

the Court entertained the presumed entity "GRP Loan LLC" as a purported Creditor.  It

1

was subsequently determined that GRP Loan LLC was without substance; a "paper entity" or sham corporation set up in Delaware to disguise the interest of others. "GRP" was one of a dizzying myriad of such Delaware creations fabricated by one Natalie Bowden, of Westchester County, NY, and under the umbrella of the entity "GRP Financial Services Inc." which at one time actually had a physical presence. However, in October 2009 the entity GRP Financial Services Inc. closed up shop subsequent to investigations by the police as to fraud. "GRP Financial" and "GRP Loan" in turn manufactured a "sale" of their presumed assets only to a new paper entity, "DLJ Mortgage LLC."

4.     It turns out the "DLJ" is a creature within the entity Credit Suisse, the Swiss-based bank. "DLJ" has no personal existence; its phones and office are immersed within Credit Suisse, and again is but a paper shell designed to obfuscate and confuse both creditors and the Courts. Nonetheless, the Court allowed both DLJ and GRP to stand before it and file various Motions and engage in Pleading practice.

5.     At the time that "GRP" claimed ownership of a certain Note of the Debtor, in fact it was not the Holder of the Instrument and it held no facially valid Indorsement of the Instrument. Setting that aside, from October 2009 to the present, the Court [Weill, J.] continues to permit "GRP" to advance its Pleadings even though whatever existence the underlying entity GRP Financial might have had, dissipated with the dissolution of the GRP entities.

6.     "GRP" and "DLJ" later represented, untruthfully, to the Court that GRP had "sold" the Note of the Debtor to DLJ in October 2009. Nonetheless, for months thereafter "GRP" continued to maintain that it had a cause of interest, and Standing, before the Weill Court.

7.     ""DLJ" at the time is maintains that it "bought" the Note of the Debtor, nonetheless by Indorsement made the Note, yet not on its face or within the four corners

2

of the Instrument, payable to another, as yet undetermined. At the moment of its purported Indorsement, presuming for the moment a valid chain of Title to the Note (which does not appear to be the case at all), "DLJ" ceased to maintain an Interest in the Note and had no Standing before the Court. Indeed, it does not appear from the record that "DLJ" ever filed a Proof of Claim before the Court. Nonetheless, the Court [Weill, J.] permitted DLJ to file pleadings and represent itself in oral argument before the Court.

    8.    During the Proceedings the Court noted that the insurance of a certain property [the "Ebony Lane property] was insured with the insured party listed as the wife of the Debtor; the Debtor's name was apparently left off at the time of renewal of the policy. Although administratively easily corrected (and was done the next day, retroactively), nonetheless the Court held that this administrative glitch would be grounds for dismissal immediately. This extraordinary remedy is astonishing in that as a practical matter the property was insured, and an injured party seeking compensation would make claim against the policy, not against the bankrupt Debtor.

    9.    The Court further noted that another property in Branford ["the Branford condominium"] was not insured as to its interior. The Debtor explained that the unit was vacant, and that the exterior grounds and walls were insured by the Association that owns the elements in common. There is no access to the interior of the unit by anyone. The Weill Court ignored the salient fact that the Unit had been taken and sold in foreclosure proceedings by the Town of Branford, notwithstanding the Proof of Claim that the Town of Branford had filed and prosecuted within these Proceedings; there was nothing for the Debtor to insure. Instead of sanctioning the Town of Branford for its egregious breach of Sec. 362(a), it used the absence of interior insurance as a foundational basis for dismissing the Debtor's Petition, notwithstanding that the Debtor has no interests to insure, and no longer could even purchase insurance if he wished to.

10.    Additionally, the Court was confronted with the choice of whether or not to convert the Debtor's Petition to a Chapter 7, or to Dismiss. The Court took the latter course, although such lies against the great weight of Court precedent. For foundation, the Court noted that the Debtor had previously "filed" a Chapter 7, and thus was conversant with the provisions thereof; this is inaccurate. Indeed, it was the Court itself that had, some decades previously, converted a Chapter 13 petition into a Chapter 7 without the agreement of the Debtor, and then would up the Chapter 7 Petition without any involvement of the Debtor therein. The Debtor never made a single Filing within that Chapter 7 conversion. To Rule that the Debtor was "familiar with" the protocols of Chapter 7, and its implications for the affairs of the Debtor, is not consonant with the facts.

11.    the Court also entered an Order dismissing the Debtor's Petition "with prejudice for two years," the maximum allowed by Statute. That this is antithetical to the principles of bankruptcy Court as envisioned by the Congress is apparent in that the Court in doing so noted solely that, if it did not, "then the Debtor will be back here again." In effect, the Court pre-empted the Debtor's Statutory right to be before the Court - a right specifically made for debtors by Congress by legislation.

12.    In so doing, the Court has strayed from its duties and obligations to provide a forum for the orderly arrangement of a Debtor's affairs - precisely the reason why debtors seek the Court in the first place.   Accordingly, the Court has abused its discretionary powers invested therein, from which the Debtor by petition for review, and Appeal, seeks relief.

BY THE DEBTOR,

HERMAN VAN ECK,
P.O. Box 16
Ivoryton CT 06442
404-824-0263

Certificate of Service

Service is hereby certified of Debtor's Notice of Appeal and Motion for Review of
Judgment, by deposit of a true copy into the United States Mails, first-class postage
prepaid, or by hand delivery, addressed to:

Hunt Liebert Chester & Jacobson P.C.
50 Weston Street
Hartford, CT 06120


Holley Claiborn, U.S. Trustee
Office of the U.S. Trustee
Giaimo Federal Building
150 Court Street
Room 302
New Haven, CT 06510

On 15 May 2010

Debtor